# IN THE UNITED STATES DISTIRCT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Criminal No. 18-130 |
| | : |
| STAMATIOS KOUSISIS et al. | : |

## DEFENDANTS STAMATIOS KOUSISIS, EMANOUEL FRANGOS, AND LIBERTY MAINTENANCE, INC.'S JOINT MOTION TO COMPEL DISCOVERY

Defendants Stamatios Kousisis, Emanouel Frangos, and Liberty Maintenance, Inc., by and through their undersigned counsel and pursuant to Federal Rule of Criminal Procedure 16, hereby submit the enclosed Motion to Compel Discovery, and, in support thereof, state as follows:

**I.  Introduction**

Shortly after indictment, defendants requested that the government provide targeted and limited discovery so that they could prepare to answer the charges laid in the indictment. Instead of complying with the request, however, the government issued two electronic data dumps, leaving defendants to spend precious pre-trial time and resources scouring gigabytes of irrelevant information to attempt to locate crucial documents, including approximately 35 documents specifically referenced in the indictment and undoubtedly intended to be used at trial by the government. The government's bad-faith discovery tactics should not be countenanced. Defendants request that the Court compel the government to issue the limited discovery that the defendants requested.

**II.  Background**

On April 3, 2018, a grand jury sitting in the Eastern District of Pennsylvania returned an Indictment charging defendants Stamatios Kousisis, Emanouel Frangos, Alpha Painting and

Construction Co., Inc. ("Alpha"), and Liberty Maintenance, Inc. ("Liberty"), with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. § 1343; and making false statements, in violation of 18 U.S.C. § 1001. The Indictment alleges a fraud scheme and a series of false statements concerning the use of Markias, Inc., a Disadvantaged Business Enterprise ("DBE"), to comply with contractual obligations under two painting contracts partially funded by the Federal Highway Administration ("FHWA"), a sub-agency of the United States Department of Transportation ("DOT"). The projects at issue involved the Girard Point Bridge and the 30th Street Train Station.

The investigation that led to this indictment began at least six years ago with the execution of multiple search warrants at the job locations of three Philadelphia infrastructure repair projects: the Girard Point and Platt Bridges and the 30th Street Train Station. After a lengthy investigation by multiple federal agencies directed by the United States Attorney's Office, three individuals associated with the Alpha-Liberty Joint Venture ("JV") referenced in the instant indictment were charged with various federal crimes related to the alleged employment of members of the Philadelphia Painters Union who were illegally working in the United States. *See United States v. Frangos, et al.*, No. 14-CR-242 (E.D. Pa.) Approximately 60 days later, the corporate defendants in the current indictment, the owners of both companies, and the Alpha-Liberty Joint Venture were suspended by the FHWA from participating in federally-funded highway construction or reconstruction projects, and within days of the federal suspension, approximately 35 states followed suit. On or about November 10, 2014, all three defendants in the *Frangos* indictment were found not guilty of all charges and, shortly thereafter, the suspensions were rescinded. However, both Alpha and Liberty suffered substantial losses resulting from the suspensions.

Undaunted and arguably motivated by the not-guilty verdicts in the *Frangos* case, the government secured the instant indictment early April of this year. The defendants were arraigned and pleaded not guilty on April 12, 2018. Trial was originally scheduled to commence on May 29, 2018, but later postponed to July 30, 2018.

### III.     The Defense Seeks Limited Discovery.

On April 17, 2018, counsel for Mr. Frangos and Liberty sent government counsel a detailed letter requesting 14 targeted areas of discovery. Counsel's letter is attached hereto as Exhibit A. The classes of discovery included, *inter alia*, defendants' oral statements to the government; documents presented to the grand jury; and material required to be disclosed under the Jencks Act, 18 U.S.C. § 3500, and *Giglio v. United States*, 405 U.S. 150 (1972). *See* Ex. A, ¶¶ 3, 8, 12.

In the letter, counsel also requested that the government produce documents relevant to the specific allegations in the indictment that either will be offered into evidence in the government's case-in-chief or are material to the defendants' defenses. "***These are the only documents we request pursuant to this discovery request***," counsel wrote. "***Do not bury these documents in a sea of other documents that the government has seized from the defendants, obtained from third parties or has otherwise collected during the course of its lengthy investigation***." Ex. A, ¶ 6 (emphasis in original).

The following day, defense counsel and counsel for the government conducted via telephone the "counsel's conference" required by Local Rule of Criminal Procedure 16.1(a). On April 19, 2018, counsel for Mr. Kousisis sent government counsel a letter joining in the requests made by Liberty and Mr. Frangos and making several additional requests. A copy of this letter is attached hereto as Exhibit B.

## IV. The Government Dumps Its Data.

On April 26, 2018, government counsel responded that, *inter alia*, the government would provide documents in electronic format if the defense provided a 5-terabyte ("TB") hard drive. A terabyte is equal to 1,000 gigabytes ("GBs"). A copy of counsel's letter is attached hereto as Exhibit C. On April 27, 2018, counsel for Mr. Kousisis provided the requested hard drive. A copy of counsel's enclosure letter is attached hereto as Exhibit D.

Three weeks later, on May 18, 2018, government counsel returned the loaded hard drive to counsel for Mr. Kousisis. A copy of counsel's enclosure letter is attached hereto as Exhibit E. Upon receiving the hard drive, defense counsel provided it to Cornerstone Discovery, an e-discovery vendor, for analysis.

The analysis revealed that there is approximately 3.5 TB (3,500 GB) of compressed forensic images on the hard drive. *See* Letter of Jason Silva, attached hereto as Exhibit F, at 1. Jason Silva, the Director of Operations at Cornerstone, estimates that once the data is uncompressed, it will consume about 4 TB (4,0000 GB). *Id.* Mr. Silva further estimates that it would cost $100,000 to conduct the first-stage processing on this entire 4 TB. *Id.* at 2. This first-stage processing includes removal of duplicate, blank, and corrupt files, and also makes the files searchable.

Next, at the second stage of review, keyword and date restrictions are applied. Assuming that between 20 percent (800 GB) and 40 percent (1,600 GB) remains, this second stage would cost an additional $80,000 to $160,000, for a total of $180,000 to $260,000. There would also be monthly hosting fees applied. *Id.* Even after the processing, counsel would be left with between 800 GB and 1,600 GB of data—the equivalent of 24 million to 48 million pages—to search. *Id.*

4

The government's production also lacked key details regarding the items on the hard drive. For example, Mr. Silva notes that the hard drive includes a device labeled "5VP3BECB," which is a 750-GB drive. *Id.* But the government has not specified whether the drive came from a desktop, laptop, or server, or, crucially, who used the device before it was seized. *Id.* Without this information, it is impossible to know how to prioritize the drive during review or what keywords to use to search it. *Id.*

On June 1, 2018 (nearly two months after defendants initially requested discovery) government counsel advised that the government would be prepared to make another production on June 6, 2018 if defense counsel provided a 500-GB hard drive. A copy of counsel's letter is attached hereto as Exhibit G. On June 4, 2018, counsel for defendant Alpha spoke with government counsel concerning the state of discovery. The moving parties understand that the topics discussed included whether the government would comply with defendants' targeted discovery requests set forth in counsel's April 17, 2018 letter (Ex. A), and that Government counsel flatly rejected defendants' invitation to produce discovery without obfuscation. After defense counsel provided the second requested hard drive, on June 6, 2018, the government produced a second hard drive full of data. The hard drive was accompanied by an enclosure letter, which is attached hereto as Exhibit H.

The government's second production consisted of, among other things, more than 60,000 pages in .tif format. Each page has to be viewed individually to see its contents, and it is impossible to tell without opening each page where documents begin and end.

Defense counsel has diligently attempted to sift through the second production for more than a week. But, though counsel has located some relevant information, numerous material documents, including documents referenced in the indictment, are either (a) not included in the

5

production or (b) buried in locations where it is nearly impossible to find them. For example, paragraph 35 of the indictment alleges that specific correspondence dated June 23, 2008 and July 28, 2009 demonstrates that Markias did not perform any commercially useful function on the Girard Point Bridge project and acted as a "mere pass-through or front, to give the appearance that DBE requirements had been met." Given that the correspondence is specifically referenced in the indictment, it is likely that the government will rely on it during its case-in-chief. *See* Fed. R. Crim. P. 16(a)(1)(E)(ii). Yet counsel has not been able to locate within the ocean of documents dumped by the government the correspondence referenced in paragraph 35. In fact, counsel has been able to locate few documents specifically listed in the indictment.

In addition to their April 17, 2018 request for the documents specifically referenced in the indictment, *see* Ex. A, defendants requested the government's grand jury exhibits. *See* Ex. B. Instead of simply producing them, the government has employed beclouding tactics. Although the government has provided transcripts of grand jury testimony of potential government witnesses as well as copies of the documents marked as exhibits during their testimony, the government has curiously omitted the transcript of the case agent's grand jury testimony as well as copies of the exhibits, if any, marked during his testimony. Logically, if any documents were marked during the government's presentation of the indictment, they no doubt correspond with the documents specifically identified in the indictment sought by defendants' April 17, 2018 discovery letter. Thus, it appears that the government is not only burying some or all of the highly material documents requested in defendants' discovery letter, it may also be withholding them.

V. **Argument: The Government Should Be Compelled to Produce the Limited Universe of Documents Requested in Defense Counsel's Letters.**

"Rule 16 of the Federal Rules of Criminal Procedure delineates the categories of information to which defendants are entitled in pretrial discovery in criminal cases, with some

additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994). Among other things, Rule 16 requires disclosure of "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item it its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). An item is "material" where "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, … or assisting impeachment or rebuttal." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (citation and quotation marks omitted). The materiality standard is "not a heavy burden." *Id.* (citation omitted). Where a party fails to perform its discovery obligations, a court may, *inter alia*, "order that party to permit the discovery or inspection" or "enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(A), (D).

Here, the government is either withholding vital documentary evidence that it is required to produce under Rule 16, or it has produced the documents in a form that makes them impossible to find. Either way, the effect is to render the information unavailable to the defense with trial fast approaching. The Court should order the government to make the narrower production that the defense requested two months ago in the letters attached to this motion as Exhibits A and B.

While Rule 16 does not specify a mode of production for discovery, courts have not hesitated to intervene when the size of production makes it difficult for the defense to adequately prepare for trial. *See United States v. Poindexter*, 727 F. Supp. 1470, 1484 (D.D.C. 1989) (where government pointed to thousands of documents it "may" rely on at trial, court rejected government's "broad brush approach" and ordered it to provide defense with specific list of

documents on which it intended to rely for its case-in-chief); *see also United States v. McDonald*, No. 01-CR-1168, 2002 U.S. Dist. LEXIS 21655, at *8 (E.D.N.Y. Aug. 6, 2002) ("[T]he purpose of requiring the government to identify which documents it will rely upon at trial in a situation where there are thousands of documents is to allow the defendant to adequately prepare for his or her defense. General familiarity with the nature of the documents will not allow defendants to do that.") (ellipses omitted) (quoting *United States v. Upton*, 856 F. Supp. 727, 747-48 (E.D.N.Y. 1994)); *United States v. McDade*, No. 92-249, 1992 U.S. Dist. Lexis 19254, at *4 (E.D. Pa. Dec. 11, 1992) (noting the "difficulty the defense is having in attempting to pull a probative needle or two out of the many large proverbial haystacks which the government has made available" and ordering the government to identify portions of the production that it would not rely on at trial). The government cannot discharge its "duty to disclose" simply by opening its file and emptying the contents. *United States v. Cutting*, No. 14-cr-00139-SI-1, 2017 U.S. Dist. Lexis 5006, at * 24 (N.D. Cal. Jan. 12, 2017) ("At some point, 'disclosure,' in order to be meaningful, requires 'identification' as well."); *see also United States v. Locascio*, No. 4:05-476-RBH, 2006 U.S. Dist. Lexis 74036, at *21-23 (D.S.C. Sept. 27, 2006) (despite open-file policy, ordering government to identify particular patient records in healthcare fraud case; "[w]ithout this specific knowledge, the defendants would be left to guessing which of the 3,000 patient records the Government would use at trial. Even with the most reasonable diligence such would be impracticable and akin to 'finding a needle in a haystack.'").

In this case, the government has dumped millions of documents on the defendants. In fact, with respect to the first production alone, it would cost defendants $180,000 to $260,000 just to reduce the production to a usable format. *See Locascio*, 2006 U.S. Dist. Lexis 74036, at *23 (noting that cost of having expert review 3,000 patient records was important consideration in

ordering more-specific disclosure). And even at that point, defendants would have to review more than 24 million pages of documents before the fast-approaching trial, an impossible task.

This is a relatively straightforward case. The indictment alleges a single fraud scheme involving a single DBE on two projects. Defendants, however, cannot adequately prepare for trial if they do not have access to the primary documents that will be introduced during the government's case-in-chief. Moreover, though defendants had hoped to enter into stipulations with the government with respect both to the authenticity of documents and to particular facts, they will not be in a position do so until the government provides the relevant documents in a usable form.

The defendants requested the documents that will assist them in preparing for trial in their letters of April 17 and 19, 2018. The government's refusal to produce those documents—and its insistence on dumping more than 4 TB of data on the defendants instead—demonstrates bad faith. Defendants respectfully request that the Court compel the government to produce the requested documents.

**VI.  Conclusion**

For the foregoing reasons, Mr. Kousisis, Mr. Frangos and Liberty respectfully request that the Court order the government to produce the documents requested in the letters attached as Exhibits A and B.

Respectfully submitted,

| CEDRONE & MANCANO, LLC | STEVENS & LEE |
|---|---|
| By: */s/ Mark E. Cedrone* | By: /s/ William A. Destefano |
| Mark E. Cedrone, Esquire | William A. DeStefano |
| 123 South Broad Street – Suite 810 | Terri A. Pawelski |
| Philadelphia, PA 19109 | Matthew C. Brunelli |
| Tele: 215.925.2500 | 1818 Market St., 29th Floor |
| Facsimile: 215.925.6471 | Philadelphia, PA 19103 |
| E-Mail: mec@cedrone-mancano.com | |
| | Attorneys for Defendants Liberty |
| Attorney for Defendant Stamatios Kousisis | Maintenance, Inc. and Emanouel Frangos |

Dated: June 20, 2018

# CERTIFICATE OF SERVICE

    I, Mark E. Cedrone, certify that on the 20th day of June 2018, I served a copy of the foregoing document on all counsel of record via the Court's ECF system.

                                            */s/ Mark E. Cedrone*
                                              MARK E. CEDRONE